**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHARLES RODRIGUEZ,** | ) | **CASE NO. 3:10CV2125** |
| | ) | |
| **Petitioner,** | ) | **JUDGE JAMES S. GWIN** |
| | ) | |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **ROBERT WELCH, Warden,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Charles Rodriguez, ("Rodriguez"), *pro se*, challenges the constitutionality of his conviction in the case of *State v. Rodriguez*, Lucas County Court of Common Pleas Case No. CR 2007-01168.  Rodriguez filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on September 22, 2010.  On February 1, 2011, Warden Keith Smith ("Respondent") filed his Answer/Return of Writ.  (Doc. No. 6.)  Rodriguez filed a Traverse on May 2, 2011.  (Doc. No. 9.)  On May 9, 2011, Respondent opposed Petitioner's request for an evidentiary hearing  (Doc. No. 10.)  For reasons set forth in detail below, it is recommended that Rodriguez's Petition be denied.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Rodriguez's conviction as follows:

{¶ 7} The following undisputed facts are relevant to the issues raised on appeal. On January 23, 2007, the grand jury issued an indictment charging appellant with the offense of murder, in violation of R.C. 2903.02(A) and 2929.02.  Specifically,

---

[1]Keith Smith is currently the Warden at Toledo Correctional Institution.

the indictment charged appellant with knowingly causing the death of another. On August 28, 2007, the trial court, pursuant to Crim.R. 7, amended the indictment. In doing so, the trial court deleted the *mens rea* of knowingly and inserted the *mens rea* of purposefully to properly reflect the statutory language.

*State of Ohio v. Rodriguez*, 2009 WL 1263170 (Ohio App. 6th Dist. May 8, 2009).

## II. Procedural History

### A. Conviction

In January, 2007, a Lucas County Grand Jury charged Rodriguez with one count of murder in violation of Ohio Revised Code ("O.R.C.") §§ 2903.02(A) and 2929.02, together with a firearm specification. (Doc. No. 6-2, Exh. 1.) On August 30, 2007, a jury found Rodriguez guilty as charged . (Doc. No. 6-2, Exh. 3.) On September 7, 2007, the trial court sentenced him to a term of fifteen years to life for the conviction of murder and to a consecutive term of three years for the firearm specification. (Doc. No. 6-2, Exh. 4.)

### B. Direct Appeal

On September 14, 2007, Rodriguez, through counsel, filed a Notice of Appeal with the Court of Appeals for the Sixth Appellate District ("state appellate court") raising a single assignment of error as follows:

Mr. Rodriguez's conviction on the charge of murder, pursuant to R.C. 2903.02 is void for lack of subject matter jurisdiction where the indictment upon which it was based failed to charge the correct culpable mental state.

(Doc. No. 6-2, Exhs. 5, 6.) On May 8, 2009, Rodriguez's conviction was affirmed. (Doc. No. 6-2, Exh. 9.)

On June 9, 2009, Rodriguez filed a Notice of Appeal with the Supreme Court of Ohio raising a single proposition of law as follows:

Mr. Rodriguez's conviction on the charge of murder, pursuant to R.C. 2903.02 is void for lack of subject matter jurisdiction where the indictment upon which it was based failed to charge the correct culpable mental state, violating his 14th Amendment Due Process rights.

(Doc. No. 6-2, Exh. 10.) On September 30, 2009, the appeal was dismissed as not involving any substantial constitutional question.

### C. Application to Reopen Pursuant to Ohio App. R. 26(B)

On August 11, 2009, Rodriguez, *pro se*, filed an application to reopen his direct appeal

2

pursuant to Ohio App. R. 26(B), proposing four assignments of error:

1.    The Appellant's Sixth Amendment right to an impartial jury was violated.

2.    The trial court improperly amended the appellant's indictment in violation of his 6th and 14th Amendment rights.

3.    The Appellant received ineffective assistance of trial counsel in violation of his Sixth Amendment rights.  (A)  Stating that defense was not prejudiced by the amendment of the indictment; and, (B)  Putting Defendant's girlfriend on the stand.

4.    The Appellant was denied his 14th Amendment right to due process and a fair trial due to cumulative error.

(Doc. No. 6-2, Exh. 13.)  On September 21, 2009, the application was found to be without merit.[2]

(Doc. No. 6-2, Exh. 15.)

On October 23, 2009, Rodriguez, *pro se*, appealed to the Ohio Supreme Court, asserting

five propositions of law:

1.    The Appellant received ineffective assistance of appellate counsel in violation of his 6th Amendment Rights where the attorney failed to raise the meritorious arguments contained in Propositions of Law II through V.

2.    The Appellant's Sixth Amendment Right to an impartial jury was violated.

3.    The trial court improperly amended the Appellant's indictment in violation of his 6th and 14th Amendment rights.

4.    The Appellant received ineffective assistance of trial counsel in violation of his Sixth Amendment rights.

5.    The Appellant was denied his 14th Amendment right to due process and a fair trial due to cumulative error.

(Doc. No. 6-2, Exh. 17.)  On December 30, 2009, the Ohio Supreme Court dismissed the appeal

as not involving any substantial constitutional question.  (Doc. No. 6-2, Exh. 18.)

**D.    Federal Habeas Petition**

On September 22, 2010, Rodriguez filed a Petition for Writ of Habeas Corpus, raising the

following grounds for relief:

**GROUND ONE**: The trial court improperly amended the Petitioner's indictment

---

[2]The state appellate court allowed Rodriguez to file an untimely appeal as he demonstrated in a supplemental application that the prison staff did not timely mail the original. (Doc. No. 6-2, Exh. 14.)

3

in violation of his 6th and 14th Amendment rights. On August 27, 2007, during trial, the judge brought to counsel's attention a problem with the indictment: the wrong *mens rea* was charged. Upon the oral motion of the State, and over the objection of Mr. Rodriguez's counsel, the trial court corrected the *mens rea* in the indictment, deleting "knowingly" and inserting "purposely" in its place. The appellant was not informed of the nature and cause of the accusation. First, the Court did not amend the indictment until the trial was underway (opening statements had occurred, witnesses were sworn, evidence was adduced, and testimony was offered by the state). Consequently, the defense didn't have time to prepare a defense for the proper *mens rea*. Second, the defense was prejudiced by this amendment: "purposely" is a higher *mens rea* than "knowingly," requiring a higher level of proof.

**GROUND TWO**: The Petitioner's Sixth Amendment Right to an impartial jury was violated. During a recess at trial, the jury went to a restaurant to eat lunch. The victim's fiancé, Jessica Herrera, just happened to work at this establishment. While the jurors were eating, Ms. Herrera approached them and introduced herself, telling them she was the victim's fiancé. She also told the jury that she hoped they did "the right thing." Ms. Herrera then gave the jury a plate full of cookies and left the table, crying. When the judge learned of this obviously inappropriate conduct, she questioned each one of the jurors individually. The judge asked the first juror if she felt sympathy for the victim's fiancé. This juror indicated that, although she believed she could reach a fair decision, she did indeed feel sympathy for the victim. We don't know how many other jurors felt sympathy for the victim because the judge didn't ask that specific question again. The victim's improper contact biased the jury.

**GROUND THREE**: The Petitioner received ineffective assistance of trial counsel in violation of his Sixth Amendment rights. The petitioner received ineffective assistance of trial counsel for the following two reasons: (A) Counsel stated that the defense was not prejudiced by the amendment of the indictment. During trial, the judge allowed amendment of the indictment to reflect the mens rea state for the offense of murder. Although the attorney objected to this amendment, he claimed he wasn't prejudiced by it. The attorney's performance was deficient for saying that the defense wasn't prejudiced by the amendment of the indictment. This statement was inaccurate because the Court was substituting the *mens rea* of "knowingly," which required a lesser degree of proof, with the *mens rea* of "purposely,"which requires a higher degree of proof. The petitioner was prejudiced by this ineffectiveness because the attorney's false belief probably influenced the judge to overrule the defense's objection to the amendment. And (B) Putting the Petitioner's girlfriend on the stand. At trial, the attorney put the Defendant's girlfriend on the stand to have her testify how the Defendant had previously told her of threats made against him by the victim. The attorney was apparently trying to bolster a self-defense claim. But as the attorney should have known, these statements were inadmissible because they were hearsay. By putting her on the stand, the attorney opened the door for the prosecution to bring up past incidents of violence and jealously by the Appellant. The attorney's performance was deficient by calling the Defendant's girlfriend as a witness. The attorney should have known that her favorable testimony would be inadmissible due to hearsay, and calling her to the stand would open the door to damaging testimony. The appellant was prejudiced by this decision. Her testimony did nothing but hurt the defense.

**GROUND FOUR**: The Petitioner received ineffective assistance of appellate counsel in violation of his 6th Amendment Rights where the attorney failed to raise

4

meritorious arguments on direct appeal.  The failure of Petitioner's court-appointed appellate counsel to raise meritorious issues on appeal (set forth herein as Grounds 2 and 3 of this application) deprived appellant of having all non-frivolous and potentially meritorious assignments of error considered on direct appeal from his conviction.

(Doc. No. 1.)

### III.  Cognizability

The U.S. Supreme Court has consistently stated that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.  *Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

To be entitled to relief in federal habeas corpus a petitioner must establish that there has been an infringement of a right guaranteed under the United States Constitution.  *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994).  As a general rule, an error of state law in the admissibility of evidence does not constitute such a denial and, therefore, is not cognizable in habeas corpus.  *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001).  Under the AEDPA, the states have wide latitude in ruling on evidentiary matters. *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001).  In considering a habeas corpus petition a federal court may not grant relief merely because it disagrees with the evidentiary rulings of the state courts, but may only do so if the state court's rulings were contrary to those of the United States Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846 (6th Cir. 2000).  Such claims are only cognizable where the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights."  *Clemmons*, 34 F.3d at 356.

### IV.  Exhaustion and Procedural Default

#### A.      Exhaustion Standard

State prisoners must exhaust their state remedies prior to raising claims in federal habeas

corpus proceedings.  *See* 28 U.S.C. § 2254(b),(c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

### B.  Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

A claim may become procedurally defaulted in two ways.  *Id*.  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[3]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the

---

[3]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and

"prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

6

petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

### C. Application of Procedural Default to Grounds Two and Three

In ground two, Rodriguez contends his Sixth Amendment right to an impartial jury was violated as some of the jurors were exposed to an incident outside of the courtroom involving the victim's fiancé. (Doc. No. 9 at 8-10.)

In ground three, Rodriguez claims he was prejudiced by ineffective assistance of trial counsel in two respects. (Doc. No. 9 at 10-13.) First, he contends that although trial counsel objected to the mid-trial amendment of the indictment, he stated on the record that the amendment did not cause him to be misled. (Doc. No. 9 at 11.) Specifically, Rodriguez argues that counsel failed to argue two important points: (a) that an indictment could not be amended to add the intent element; and (2) that "purposely" required a higher degree of proof than "knowingly." *Id.* Second, Rodriguez argues that trial counsel was ineffective when he called Rodriguez' girlfriend as a witness, since her testimony "opened the door" to the State exposing "a past incident of violence and jealousy by Mr. Rodriguez." *Id.*

Respondent argues that these two grounds are procedurally defaulted since they were not raised as independent claims in state court. (Doc. No. 6 at 8-10.) Rodriguez concedes that these grounds are procedurally defaulted, however, he argues that he satisfies the "cause" and "prejudice" requirement as his appellate counsel failed to raise them on direct appeal. (Doc. No. 9 at 7.) Respondent contends that the state appellate court addressed these issues in the 26(B)

7

decision, ruling that they lacked merit; and, therefore, Rodriguez cannot demonstrate prejudice. (Doc. No. 6 at 9.)

Because the state appellate court, in order to determine if Rodriguez was prejudiced by his appellate counsel's actions, addressed the merits of Rodriguez's claim that his trial counsel was ineffective, this Court declines to address the procedural default issue. The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case. *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F.Supp.2d 811, 826-27 (N.D. Ohio 2001).

## V.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

## VI.  Analysis

### A.  Ground One - Amendment of Indictment

Rodriguez contends the trial court improperly permitted amendment of the indictment by changing the culpable mental state from "knowingly" to "purposely," thus violating his due process rights to a fair trial and adequate notice of the charges against him.  (Doc. No. 9 at 2-8.) Respondent argues that ground one is not cognizable in federal habeas as correcting a defect in the indictment did not rise to the level of a constitutional violation.  (Doc. No. 6 at 6-8.)

The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him in order to permit adequate preparation of his defense. *Koontz,* 731 F.2d at 369; *see, e.g., In Re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977).  This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged.  Such definiteness and certainty is required as will enable a presumptively innocent man to prepare for trial. *Combs v. Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976) *cert. denied*, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976) (If sufficient notice

9

of the charges is given in some other manner, an indictment is not required.)  Fair notice has been given when "the offense [is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged.  "[T]he requirement that an indictment allege all of the elements of the offense charged . . . seeks primarily to ensure that an accused is reasonably informed of the charge made against him so that he can prepare a defense." *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) (*quoting United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580 (6th Cir. 2002)).

Ohio Rule of Criminal Procedure 7 provides that an indictment may be amended as follows:

(D) The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.  If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury.  Where a jury is discharged under this division, jeopardy shall not attach to the offense charged in the amended indictment, information, or complaint.  No action of the court in refusing a continuance or postponement under this division is reviewable except after motion to grant a new trial therefor is refused by the trial court, and no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted.

As to the culpable mental states at issue here, Ohio law defines "knowingly" and "purposely" as follows:

(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

O.R.C. § 2901.22.

In addition, Ohio case law explains that specific intent to cause the death of another may be inferred from the circumstances, including use of a deadly weapon in a manner calculated to

10

destroy life or cause great bodily harm. *State v. Sullivan*, 2008 WL 307770, *2 (Ohio App. 10th Dist. Feb. 5, 2008). "Intent need not be proven by direct testimony." *State v. Stallings*, 89 Ohio St.3d 280, 290, 731 N.E.2d 159 (2000). Instead, intent to kill "may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound." *State v. Robinson*, 161 Ohio St. 213, 53 O.O. 96, 118 N.E.2d 517 (1954) (¶ 5 of the syllabus); *State v. Eley*, 77 Ohio St.3d 174, 180, 672 N.E.2d 640, 648 (1996); *State v. Stallings* 89 Ohio St.3d 280, 290, 731 N.E.2d 159, 171 (2000). An accused's specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death. *State v. Marcum*, 2011 WL 3210051 (Ohio App. 5th Dist. Jul. 25, 2011). *Waddell*, *supra, citing State v. Mackey*, 1999 WL 1129589 (Ohio App. 8th Dist. Dec. 9, 1999). The act of pointing and firing a gun in the direction of another person is an act with death as a natural and probably consequence. *Marcum* at *12; *State v. Turner*, 1997 WL 798770 (Ohio App. 10th Dist. Dec. 30, 1997), dismissed, appeal not allowed, 81 Ohio St.3d 1496, 691 N.E.2d 1058 (1998) (finding sufficient evidence of intent to kill in firing a gun from an automobile at a group of individuals), *quoting State v. Brown*, Cuyahoga App. No. 68761, dismissed, appeal not allowed, 77 Ohio St.3d 1468, 673 N.E.2d 135 (1996); *see also State v. Smith*, 89 Ohio App.3d 497, 501, 624 N.E.2d 1114 (1993) (finding that pointing a gun at a group of people less than twenty feet away and shooting at least one shot could be used by the trier of fact as proof of intention to kill).

Even if an indictment is constitutionally deficient, harmless-error review is applicable. *Williams*, 467 F.3d at 535 (*citing United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580 (6th Cir. 2002))**.** In *Fry v. Pliler*, 551 U.S. 112, 127 S.Ct. 2321, 2328 (2007), the Supreme Court held that a federal habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the . . . standard set forth in *Brecht* [*v. Abrahamson*, 508 U.S. 619, 113 S.Ct. 1710, 123 L.Ed. 2d 353 (1993)]." *Fry*, 551 U.S. at 121-122. The standard is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 623 (citation omitted). "If, however, 'the matter is so evenly balanced' that

11

the habeas court has 'grave doubt' as to the harmlessness of the error, it should 'treat the error, not as if it were harmless, but as if it affected the verdict." *Hereford v. Warren*, 536 F.3d 523, 533 (6th Cir. 2008) (*citing O'Neal v. McAninch*, 513 U.S. 432 (1995)).

The state appellate court, applying Ohio law, concluded that Rodriguez was not prejudiced by the amendment of the indictment, as follows:

> {¶ 6} Under Ohio law, it is well-settled that appellate courts "review a trial court's decision to permit the amendment of an indictment under an abuse-of-discretion standard." *State v. Beach*, 148 Ohio App.3d 181, 772 N.E.2d 677, 2002-Ohio-2759, ¶ 23. The Ohio Supreme Court has determined that an abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
>
> {¶ 7} The following undisputed facts are relevant to the issues raised on appeal. On January 23, 2007, the grand jury issued an indictment charging appellant with the offense of murder, in violation of R.C. 2903.02(A) and 2929.02. Specifically, the indictment charged appellant with knowingly causing the death of another. On August 28, 2007, the trial court, pursuant to Crim.R. 7, amended the indictment. In doing so, the trial court deleted the *mens rea* of knowingly and inserted the *mens rea* of purposefully to properly reflect the statutory language.
>
> * * *
>
> {¶ 9} In Ohio, it is well-settled that "[t]he [trial] court may at *any* time before, during, or after a trial amend the indictment * * * provided no change is made in the *name* or *identity* in the crime charged." Crim.R. 7(D). (Emphasis added.) As a result, the Ohio Supreme Court has determined that "[a]n indictment, which does not contain all the essential elements of an offense, may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission * * *." *State v. O'Brien* (1987), 30 Ohio St.3d 122, 508 N.E.2d 144, paragraph two of the syllabus.
>
> {¶ 10} This court has carefully reviewed the record. The record clearly shows that the addition of the term "purposefully" changed neither the name nor the identity of the offense of murder charged therein. Furthermore, the record shows that counsel for appellant explicitly recognized the trial court's authority to amend the indictment and further conceded that the amendment did not mislead or prejudice the appellant. Moreover, the record shows the trial court instructed the jurors, with respect to finding appellant guilty of the offense of murder, on the correct mens rea of purposefully.
>
> {¶ 11} After careful review of the evidence, in conjunction with the controlling legal principles, this court finds undisputed evidence that appellant was not prejudiced by the amendment of the original indictment to reflect the proper statutory language. The trial court did not abuse its discretion in amending the indictment pursuant to Crim.R. 7(D). On the contrary, it acted with clear legal authority. As such, there is nothing in the record to establish that such action was arbitrary, unreasonable, or unconscionable. Appellant's assignment of error is found not well-taken.

*State v. Rodriguez,* 2009 WL 1263170, *1-2 (Ohio App. 6th Dist. May 8, 2009).

Relying on *Forgy v. Norris*, 64 F.3d 399, 403 (8th Cir. 1995), Rodriguez argues that courts

12

have granted habeas relief under similar circumstances. *Forgy*, however, is distinguishable. In *Forgy*, the trial court found that the defendant's constitutional right to notice was violated when the state charged burglary without specifying the underlying crime that defendant intended to commit within the dwelling. The prosecution subsequently, in an amended information, charged that Rodriguez intended to commit attempted theft. The *Forgy* Court concluded that if the information had specified the crime the defendant allegedly intended to commit, he would have been able to defend himself by arguing that there is no such thing as an intent to attempt theft; and, as such he was prejudiced by the information's lack of specificity. *Id*. at 403. The *Forgy* Court held that the petitioner's constitutional right to notice of the charges against him was violated. *Id*.

Here, however, Rodriguez's indictment set forth that he was being charged with murder in violation of O.R.C. § 2903.02(A), which requires the *mens rea* of "purposely." (Doc. No. 6-2 at 1-2.) The indictment also indicated that Rodriguez was being charged with a firearm specification. *Id*. The indictment contained sufficient information to put Rodriguez on notice of the charges against him.

Moreover, the record reflects that Rodriguez's counsel was fully prepared to defend. During opening arguments, counsel told the jury that the state must prove beyond a reasonable doubt that Charles **intended** to kill the victim. (Doc. No. 6-3 at 266.) It is clear, therefore, that counsel was aware of the specific intent required by the statutory charge. Rodriguez's argument that "the trial court created a trial by ambush," fails.

Lastly, the jury was properly instructed as to the applicable *mens rea*:

Before you can find the Defendant guilty you must find beyond a reasonable doubt that on or about the 31st day of December, 2006, and in Lucas County, Ohio, the Defendant purposely caused the death of General Hurst.

I have used the word purposely. Purpose is an essential element of the offense of murder. A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the Defendant a specific intention to cause the death of General Hurst.

Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing.

13

(Doc. No. 6-6 at 854-855.)

Rodriguez was given fair notice of the charge against him.  The amendment of the indictment did not prejudice him in any way.  The Court finds ground one to be meritless.

### B.  Grounds Two and Three

In ground two, Rodriguez contends his Sixth Amendment right to an impartial jury was violated as some of the jurors were exposed to an incident outside of the courtroom involving the victim's fiancé.  (Doc. No. 9 at 8-10.)

In ground three, Rodriguez claims he was prejudiced by ineffective assistance of trial counsel in two respects.  (Doc. No. 9 at 10-13.)  First, he contends that although trial counsel objected to the mid-trial amendment of the indictment, he stated on the record that the amendment did not cause him to be misled.  (Doc. No. 9 at 11.)  Specifically, Rodriguez argues that counsel failed to argue two important points: (a) that an indictment could not be amended to add the intent element; and (2) that "purposely" required a higher degree of proof than "knowingly."  *Id*.  Second, Rodriguez argues that trial counsel was ineffective when he called Rodriguez' girlfriend as a witness, since her testimony "opened the door" to the State exposing "a past incident of violence and jealousy by Mr. Rodriguez."  *Id.*

The state appellate court, addressing these issues, denied Rodriguez's 26(B) application, ruling the assignments of error were without merit:

> In the first proposed assignment of error, appellant asserts that his constitutional right to an impartial jury was violated.  In support, appellant concludes that the jury was impartial [sic] based upon one juror having expressed sympathy for the murder victim.  However, movant concedes that the judge questioned the juror and determined that the juror could be fair.
>
> Movant furnishes no evidence, beyond the adverse verdict itself, that the jury was not fair and impartial in its handling of the case.  We find the first proposed assignment of error without merit.
>
> * * *
>
> In the third proposed assignment of error, appellant asserts that he was denied effective assistance of counsel.  In support, appellant disputes counsel's handling of the indictment amendment and of calling appellant's girlfriend to testify as a witness on his behalf.
>
> To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct was so deficient as to be construed as having undermined the proper

14

functioning of the adversarial process such that the trial court cannot be relied upon as having produced a just result. *Strickland v. Washington* (1984), 466 U.S. 668, 686. The standard of proof requires appellant to satisfy a two-pronged test. First, appellant must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687. Second, appellant must establish by a reasonable probability that, but for counsel's perceived errors, the outcome of the proceeding would have been different. *Id.*

We have carefully reviewed and considered appellant's arguments in support of his claim of ineffective assistance of counsel. We find that appellant's post-verdict disagreement with strategic assessments and decisions of trial counsel does not demonstrate that, but for these now disputed decisions, the result of the proceeding would have been different. We find the third proposed assignment of error without merit.

(Doc. No. 6-2, Exh. 15 at pp. 100-103.) The state appellate court reasonably found the underlying claims of ineffective assistance of trial counsel did not result in prejudice to Rodriguez, and, therefore, his appellate counsel was not ineffective for failing to raise them.

### 1) Ground Two - Sixth Amendment - Impartial Jury

Under the Due Process Clause of the United States Constitution, a criminal defendant has the right to be tried by a fair and impartial jury. U.S. Const. amend.VI. The right to due process, however, does not necessarily require a new trial in every instance of potential juror bias. *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Rather, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.* (*citing Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954)).

The Supreme Court held in *Remmer v. United States* that, to protect a criminal defendant's Sixth Amendment right to an impartial jury, "when possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the constitutional guarantee." *United States v. Perry*, 438 F.3d 642, 651 (6th Cir. 2006) (*quoting United States v. Davis*, 177 F.3d 552, 556 (6th Cir. 1999)). In *Remmer,* the Supreme Court outlined the procedure that courts should follow when advised of unauthorized contact with a juror: "The trial court should not decide and take final action *ex parte* ... but should determine the circumstances, the impact thereof upon the juror, and whether or not it was

15

prejudicial, in a hearing with all interested parties permitted to participate." *Remmer*, 347 U.S. at 229–30.

The Sixth Circuit has held that when a habeas court addresses a claim of juror misconduct, it must consider four points: (1) when a defendant alleges unauthorized conduct with a juror has tainted a trial, a hearing must be held; (2) no presumption of prejudice arises from such contact; (3) the petitioner bears the burden of proving actual juror bias; and (4) juror testimony at a *Remmer* hearing is not inherently suspect. *Zuern v. Tate*, 336 F.3d 478, 486 (6th Cir. 2003) (*quoting United States v. Rugiero*, 20 F.3d 1387, 1390 (6th Cir. 1994)).

Here, the trial court conducted a proper *Remmer* hearing, questioning each juror about their knowledge of an incident involving the jury while on a lunch break.  (Doc. No. 6-5 at 712-750.) About six to eight jurors were seated together at a local restaurant, when an employee approached their table with a plate of chocolate chip cookies, setting them on their table, while informing them that she was the fiancé of the victim. *Id*. at 712.

Rodriguez specifically objects to the court's questioning of Juror No. 3 who stated she felt sympathy for the fiancé. *Id*. at 722-723.  The record reveals, however, that the court asked the juror if she understood that "the case must be decided solely upon the evidence in the courtroom and the law and even though jurors are never free of bias or sympathy . . . and prejudice . . ., the jury should not consider such in their deliberations." *Id*. at 720-721.  Juror No. 3 agreed and assured the Court that as a nurse she is able to separate her emotions. *Id*. at 722.

Rodriguez further argues that the trial court erred when it did not inquire regarding whether the other jurors felt sympathy for the waitress/fiancé of the victim.  (Doc No. 1 at 14.)  The record reflects, however, that the judge questioned each juror asking if the incident would interfere in any way with their ability to be fair and impartial.  (Doc. No. 6-5 at 712-750.  Each juror responded that the incident would have no impact on their verdict. *Id*.

Moreover, both the prosecutor and defense counsel were afforded the opportunity to question the jurors regarding bias. *Id*.  After questioning each juror, the judge questioned the waitress/fiancé. *Id*. at 751.  She told the court she had been in court on a previous day and recognized the jurors when they came to the restaurant for lunch.  She stated that she asked the

16

group how their food was.  She told the jury that she was the victim's fiancé, although she knew the jurors were instructed not to say anything.  She also offered them a plate of cookies.  *Id*. at 751-752.  The court concluded that the jury's ability to impartially decide the case was not impacted.  Indeed, defense counsel stated on the record, "on behalf of Mr. Rodriguez we are satisfied that the jury acted appropriately.  It sounds like there is not going to be an impact on their decision and we are satisfied."  *Id*. at 757.

After the *voir dire* of each juror, Rodriguez did not object to the trial court's ruling. Rodriguez therefore waived any objection with respect to a *Remmer* hearing.  See *United States v. Vining*, 224 Fed. Appx 487, 493–94 (6th Cir. 2007); *United States v. Walker*, 160 F.3d 1078, 1083–84 (6th Cir. 1998).  "An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course."  *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990).  Ground two is without merit.

### 2) Ground Three - Ineffective Assistance of Trial Counsel

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington,* 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are

17

not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Rodriguez claims that trial counsel was ineffective for, in essence, consenting to a prejudicial amendment of the indictment. While counsel registered an objection on the record, he also acknowledged the court's authority to amend and suggested that substituting the culpable mental state of purposely for knowingly would not mislead or prejudice Rodriguez. Rodriguez cites no controlling authority for his claim that an indictment could not, in keeping with due process, be so amended. While it is true that under Ohio law, purposely is a more specific intent than knowingly, nothing in the record supports any claim of prejudice by Rodriguez. The state appellate court, relying on Ohio Crim. R. 7(D) and an Ohio Supreme Court case, concluded that the trial court acted with clear legal authority in amending the indictment. As there was no error, counsel was not ineffective.

Rodriguez's claim of ineffective assistance of trial counsel for allowing Rodriguez's girlfriend to testify is also meritless. The state appellate court ruling on Rodriguez's 26(B) application found that he had not demonstrated that the outcome of the trial would have been different, but for his claimed ineffective assistance. The record reveals that the girlfriend's testimony supported his self-defense claim by testifying that the victim carried a gun and was not afraid of Rodriguez. (Doc. No. 6-5, p. 541.) Mere disagreement with trial strategies is not enough to support a claim of ineffective assistance of counsel.

Applying deference to the state court's decision, the Court finds it is neither contrary to nor involves an unreasonable application of clearly established Federal law. Therefore, ground three lacks merit.

### C.  Ground Four - Ineffective Assistance of Appellate Counsel

In ground four, Rodriguez contends that he was denied effective assistance of appellate counsel for failing to raise meritorious issues on direct review, specifically referring to the ineffective assistance of trial counsel claims in grounds two and three. (Doc. No. 9 at 13-14.) Since the Court has considered and rejected grounds one through three on the merits, there is no

18

need to address appellate counsel's ineffectiveness for failing to raise them earlier.  There is no prejudice.

## VII.  Request for Evidentiary Hearing

Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing."  *Stanford v. Parker*, 266 F.3d 442, 459-460 (6th Cir. 2001) (*citing Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994) (citation and internal quotation omitted)).  However, a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit.  *Id.*

In this case, upon review of the pleadings and transcripts, the procedural issues presented can be resolved from the record.  An evidentiary hearing is, therefore, not required.

## VIII.  Conclusion

For the foregoing reasons, it is recommended that Rodriguez's Petition be denied.

s/ Greg White_____
United States Magistrate Judge

Date:  __November 21, 2011__

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

19