UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
: 
CHARLES RODRIGUEZ, :
: CASE NO. 3:10-CV-2125
Petitioner, :
:
v. : OPINION & ORDER
: [Resolving Doc. 1]
ROBERT WELCH, Warden, :
:
Respondent. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

*Pro se* Petitioner Charles Rodriguez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, seeking relief from his incarceration on a state-court murder conviction. [Doc. 1.] The Court referred Rodriguez's petition to Magistrate Judge Greg White for a Report and Recommendation.

Magistrate Judge White recommends the Court deny Rodriguez's petition. [Doc. 11.] Rodriguez objects to that recommendation. [Doc. 15.] Because Rodriguez has not shown any basis for relief, the Court **OVERRULES** Rodriguez's objections, **ADOPTS** Magistrate Judge White's recommendation, and **DENIES** Rodriguez's petition.

I.

In 2007, Rodriguez was indicted for murder with a firearm specification in Ohio state court. [Doc. 6-2, at Ex. 1.] Although Ohio's murder statute, in relevant part, prohibits only "purposely caus[ing] the death of another," *see* Ohio Rev. Code § 2903.02(A), the indictment mistakenly charged

-1-

Case No. 3:10-CV-2125
Gwin, J.

Rodriguez with "knowingly" causing the death of another. [Doc. 6-2, at 53.] On August 28, 2007, during Rodriguez's trial, the trial court amended the indictment to replace "knowingly" with "purposely." [Doc. 6-4, at 309-10.] Rodriguez's attorney objected to this amendment, but conceded that he had not been misled by the initial error in the indictment. *Id*. Two days later, a jury convicted Rodriguez; the court sentenced him to a prison term of fifteen years-to-life for the murder and a consecutive term of three years for the firearm specification.

Rodriguez appealed his conviction, arguing that the trial court lacked subject-matter jurisdiction because the original indictment did not recite the correct mental state. *See* [Doc. 6, at 2.] The Ohio Court of Appeals affirmed the conviction, [Doc. 6-2, at 60-61,] and the Ohio Supreme Court denied leave to appeal. [Doc. 6-2, at Ex. 12.] Rodriguez later filed a *pro se* application to reopen his direct appeal, adding several additional claims, including that his appellate counsel had been unconstitutionally ineffective. [Doc. 6 at 3.] The Ohio Court of Appeals denied the application, and the Ohio Supreme Court again denied leave to appeal. *Id.*

Rodriguez then filed this timely petition for a writ of habeas corpus.

II.

The Federal Magistrates Act requires a district court to "make a *de novo* determination of those portions of [a Report and Recommendation] to which objection is made." 28 U.S.C. § 636(b)(1)(C). Here, Rodriguez objects to each of Magistrate Judge White's recommendations, and the Court therefore reviews the entire petition *de novo*.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits federal-court review of a state prisoner's habeas petition. Among other limitations, a federal court may not grant

Case No. 3:10-CV-2125
Gwin, J.

relief on a claim adjudicated on the merits in state court unless the state-court adjudication either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[1] With this in mind, the Court turns to Rodriguez's petition.

III.

*A. Ground One - Amendment of the Indictment*

Rodriguez first argues that the initial error in his indictment violated his Fourteenth Amendment right to receive fair notice of the charges against him. [Doc. 15, at 4-5.] Due process requires the government to provide a defendant "notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge." *Joseph v. Coyle*, 469 F.3d 441, 463 (6th Cir. 2006). But the United States Constitution does not require a state to have any particular form of indictment—or any indictment at all—provided the government gives an accused sufficient notice of the charges. *Combs v. Tennessee*, 530 F.2d 695, 698-99 (6th. Cir. 1976). And it's enough if the charged offense has such "definiteness and certainty" that it will enable the defendant to be apprised of the charges and "to prepare for trial." *Id.* at 698. A deficient indictment is harmless unless a petitioner can show prejudice stemming from the deficiency. *United States v. Cor-Bon Custom Bullet*

---

[1] Some of the grounds Rodriguez asserts appear not to have been raised or adjudicated in state court. Nevertheless, because Rodriguez's claims fail on the merits, the Court, like Magistrate Judge White, will address the substance of those claims.

-3-

Case No. 3:10-CV-2125
Gwin, J.
*Co.*, 287 F.3d 576, 581 (6th Cir. 2002).

In this case, the indictment initially misstated the *mens rea* for murder as "knowingly." (For what it's worth, the indictment correctly cited the murder statute, Ohio Revised Code § 2903.02(A).) Rodriguez, pointing to this mistake, says that the indictment gave inadequate notice of the charges against him. [Doc. 15, at 7.] But even if the indictment was constitutionally deficient, Rodriguez has not shown any prejudice stemming from that deficiency. The trial court record contradicts Rodriguez's claim that his was a "trial by ambush." *Id.*

In truth, Rodriguez's attorney knew before the trial that his client was charged with "purposeful" killing. He even told the court that he had not been misled by the original indictment. *See* [Doc. 6-4, at 308 ("I would be less than honest to say we were misled by this indictment").] And what's more, in his opening statement to the jury, before the indictment was amended, Rodriguez's attorney announced that "[the] state must pro[ve] beyond a reasonable doubt that [Rodriguez] *intended* to kill" the victim. [Doc. 6-3, at 266 (emphasis added)]. So, contrary to Rodriguez's more recent protestations of surprise, it's apparent that he and his attorneys prepared their strategy with full knowledge of the correct standard.[2] Which explains why the trial transcript reflects no hint of confusion on the correct mental state. And probably explains why, though he bore the burden of doing so, Rodriguez has not made clear how any error in the indictment affected the trial's outcome. *See United States v. Pugh*, 405 F.3d 390, 401 (6th Cir. 2005) (an error is harmless unless it is "more probable than not that the error materially affected the verdict").

---

[2] It's well established that notice to a party's attorney constitutes notice to the party. *See, e.g.*, *Link v. Wabash Railroad,* 370 U.S. 626, 633-34 (1962).

Case No. 3:10-CV-2125
Gwin, J.

Because Rodriguez has not demonstrated any prejudice stemming from any deficiency in his indictment, Ground One fails.

*B. Ground Two - Impartial Jury*

Rodriguez next argues that the jury was biased by improper contact with the victim's former fiancée, Jessica Herrera. During a trial recess, several jurors went to a restaurant for lunch. [Doc. 6-5, at 712-57.] Herrera, who worked in the restaurant, recognized them; she brought them a plate of free cookies and revealed her identity to them. *Id.* Rodriguez contends that the incident irredeemably compromised the jury's impartiality.

The Sixth Amendment's guarantee of an impartial jury applies in state criminal proceedings. *Jackson v. Bradshaw*, 681 F.3d 753, 766 (6th Cir. 2012). When there is an allegation of inappropriate juror contact, the trial judge "should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Remmer v. United States*, 347 U.S. 227, 230 (1954). "The burden of proof rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality." *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984). The relevant questions in such a hearing are whether each "juror swear[s] that he could set aside any opinion he might hold and decide the case on the evidence, and [whether] the juror's protestation of impartiality [should be] believed." *Patton v. Yount*, 467 U.S. 1025, 1036 (1984). This inquiry "is plainly one of historical fact," *id.*, and the state court's findings enjoy a presumption of correctness, *see* 28 U.S.C § 2254(e)(1). Under this standard, the deference due the trial court "is at its pinnacle." *Skilling v. United States*, 130 S. Ct. 2896, 2923 (2010).

Case No. 3:10-CV-2125
Gwin, J.

In this case, immediately after the cookie incident, the trial court held a hearing to question each of the jurors individually. [Doc. 6-5, at 712-50.] The judge asked the jurors about the contact and asked them whether the incident would cause them to be biased against the defendant. *Id.* Each of the jurors assured the court that they would decide the case solely upon the evidence from the courtroom and the law instructed by the judge. *Id.* The judge also questioned Herrera, the victim's former fiancée, and forbade her from attending the remainder of the trial or having any further contact with the jury. *Id.* at 751-57. Rodriguez's attorneys attended the hearing and were afforded an opportunity to question the jurors and Herrera. *Id.* at 712-57.

At the end of the hearing, Rodriguez's attorneys told the court that Rodriguez was satisfied with the jury's conduct and believed that the incident would not have any prejudicial impact on the jury's decision. *Id.* at 757. And the trial court found that the incident had not affected the jury's ability to decide the case impartially. *Id.* at 758. In turn, the Ohio Court of Appeals noted that Rodriguez had "furnished no evidence, beyond the adverse verdict itself, that the jury was not fair and impartial in its handling of the case." [Doc. 6-2, at 152.]

Rodriguez does not explain how the trial court erred when it determined—consistent with Rodriguez's own attorneys' assessment that there had been no prejudicial impact—that the incident had not biased the jury. Therefore, the Court finds no sufficient evidence to challenge the trial court's finding. Ground Two fails.

*C. Ground Three - Ineffective Assistance of Trial Counsel*

Rodriguez also argues that his trial counsel was ineffective. To succeed on such a claim, a defendant must make a two-part showing:

-6-

Case No. 3:10-CV-2125
Gwin, J.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable . . . . [T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland v. Washington*, 466 U.S. 668, 687-89 (1984). To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Rodriguez makes two arguments here. First, he argues that trial counsel rendered ineffective assistance because he "essentially consented" to the amendment of the indictment despite Ohio law forbidding the amendment. [Doc. 15, at 12.] In other words, Rodriguez says that federal law required his attorney to argue Ohio state law more vigorously. But Rodriguez does not explain how any such argument would have created any "reasonable probability" of a different outcome in his case.

Rodriguez's attorney objected to the amendment, preserving the issue for appeal, and the trial judge—relying on Ohio case law—overruled the objection. *See* [Doc. 6-4, at 309 (trial judge examining the "four corners of the indictment," and concluding that "clearly the Defense [was] put on notice" by the invocation of the correct statute).] And, critically, the Ohio Court of Appeals concluded that the trial court acted properly when it amended the indictment under Ohio Rule of Criminal Procedure 7(D). *State v. Rodriguez*, No. L-07-1303, 2009 Ohio App. LEXIS 1808, at ¶ 11

Case No. 3:10-CV-2125
Gwin, J.

(May 8, 2009) (trial court's ruling was grounded in "clear legal authority"). Accordingly, it's difficult to see—and Rodriguez does not explain—how he was prejudiced by his trial attorney's less-than-strenuous state-law objection to the amendment.

Second, Rodriguez claims that his attorney's decision to call as a witness Rodriguez's girlfriend, April Lutts, was a serious error amounting to ineffective assistance of counsel. As Rodriguez sees it, Lutts's testimony damaged his defense, and his attorney should have seen it coming. A review of the record reveals otherwise.

Lutts's testimony *benefitted* Rodriguez: The court allowed the jury to hear that Lutts had once told Rodriguez the victim carried a gun, a fact that reinforced Rodriguez's claim of self-defense. [Doc. 6-5, at 541.] And Lutts's testimony during cross-examination did not hurt the defense. Even though the government tried to induce Lutts to testify that she had once reported Rodriguez to the police for discharging a gun in anger, Lutts firmly denied ever making such a statement, insisting that the police had spoken only to her sister on that occasion. [Doc. 6-5, at 549-51.] Further, she denied that Rodriguez had ever carried a gun in her presence. *Id.* at 547. Rodriguez simply has not overcome the presumption that his counsel's decision to call Lutts was anything other than "sound trial strategy." See *Strickland*, 466 U.S at 689.

Because Rodriguez has not satisfied *Strickland*, Ground Three fails.

### D. Ground Four - Ineffective Assistance of Appellate Counsel

Finally, Rodriguez argues that his state appellate counsel was ineffective because he failed to raise the issues outlined in Grounds Two and Three on direct appeal. Because Grounds Two and Three fail, raising them on direct appeal would have made no difference. Accordingly, Ground Four

Case No. 3:10-CV-2125
Gwin, J.

fails as well.

### IV.

For these reasons, the Court **OVERRULES** Rodriguez's objections, **ADOPTS** Magistrate Judge White's recommendation, and **DENIES** Rodriguez's petition.

IT IS SO ORDERED.


Dated: August 31, 2012                     s/         *James S. Gwin*
                                           JAMES S. GWIN
                                           UNITED STATES DISTRICT JUDGE